**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JOHNNY JOE SUITOR,

        Defendant-Appellant.

No. 00-5182

---

Appeal from the United States District Court
for the N. District of Oklahoma
(D.C. No. 99-CR-162-C)

---

**Submitted on the Briefs:**

Thomas Scott Woodward, United States Attorney, R. Richard Love, III, Assistant
United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

Stephen J. Greubel, Ungerman & Iola, Tulsa, Oklahoma, for Defendant-Appellant.

---

Before **HENRY, BRISCOE,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Appellant, Johnny Joe Suitor, pleaded guilty to conspiracy to make, utter, and possess forged securities in violation of 18 U.S.C. §§ 371 and 513(a), and false representation of a social security account number in violation of 42 U.S.C. § 408(a)(7)(B). A Presentence Investigation Report ("PSR") was prepared and Suitor presented objections to the PSR. The district court sentenced Suitor to twenty-seven months' incarceration to be followed by a three-year term of supervised release. The court also ordered Suitor to pay restitution in the amount of $19,948.77 and to pay a special assessment of $200. In this appeal, Suitor does not challenge his conviction but appeals the sentence imposed by the district court. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a), this court **affirms** .[1]

It is undisputed that Suitor was involved in a conspiracy to cash counterfeit checks drawn on business accounts. The three other individuals involved in the conspiracy included an eighteen-year-old male, Jeremy Isbell, and twin sisters, both minors. The counterfeiting scheme was first discussed at Suitor's home some time during the Labor Day weekend of 1998. Suitor admitted that the two minor girls were at his home during the initial discussion.

---

[1]After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

One of the co-conspirators thereafter purchased a computer software program used to print business checks. Suitor installed the software on his home computer. Using information from a paycheck he received from his employer, Suitor printed several counterfeit checks drawn on the employer's account. The checks were signed by one of the minor girls. Isbell cashed three of the checks resulting in a loss to NationsBank of approximately $4,128.18.

On September 18, 1998, the two minor girls obtained several additional counterfeit checks. One girl signed the checks and the other presented them for payment. The girls cashed a total of ten checks on September 18th, resulting in a loss to NationsBank of approximately $6,266.77. Although Suitor disclaims any prior knowledge of the girls' activities on September 18th, one of the girls testified before the grand jury that Suitor had created and printed half of the checks cashed that day. In addition, Suitor's fingerprint was found on one of the checks. On September 19, 1998, Isbell cashed three counterfeit checks at various NationsBank branches. The proceeds from these checks totaled approximately $2,941.47.

In late September, the four individuals decided to print additional counterfeit business checks. These checks were drawn on a Central Crude Corporation account; the account number was obtained from a royalty check Suitor received from Central Crude Corporation. One of the girls testified that

all four individuals were present when Suitor printed these checks on his home computer. The checks were signed using a signature stamp. On September 30, 1998, Suitor and one of the minor girls drove Isbell to several NationsBank locations. Isbell successfully cashed three of the counterfeit Central Crude Corporation checks. The loss to NationsBank from these three checks totaled approximately $4,076.76. When Isbell attempted to cash the fourth check, bank employees contacted the Tulsa Police Department and stalled Isbell until officers arrived.

Suitor was named in a two-count indictment filed on November 3, 1999, and was arrested on December 14, 1999. A superceding indictment was filed on February 8, 2000. Suitor pleaded guilty to two of the counts in the superceding indictment: conspiracy to utter a forged security of an organization, and false representation of a social security account number. *See* 18 U.S.C. §§ 371, 513(a); 42 U.S.C. § 408(a)(7)(B). In the PSR prepared before sentencing, the probation officer recommended, *inter alia*, a four-level increase in Suitor's offense level because the loss amount exceeded $20,000; a two-level increase because Suitor used a minor to commit the conspiracy offense; and an additional two-level increase because Suitor acted as an organizer, leader, manager, or supervisor while committing the offense of conviction. *See* U.S.S.G. §§ 2F1.1(b)(1)(E), 3B1.4, 3B1.1(c). The PSR also recommended that Suitor's base

offense level be decreased two levels for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a).

Suitor filed an objection to the PSR and an addendum was prepared. The two-level increase pursuant to U.S.S.G. § 3B1.1(c) based on Suitor's role in the offense was removed from the PSR but the remaining recommended increases and decrease to Suitor's base offense level were retained. At the sentencing hearing, the district court found that Suitor was responsible for $21,493.12 in losses; that Suitor was an organizer and leader of the conspiracy; that Suitor used the minor girls in the commission of the offense; and that Suitor was not entitled to a two-level decrease for acceptance of responsibility because he testified untruthfully at the sentencing hearing. Suitor filed this appeal challenging the district court's determinations on these four sentencing issues.

This court reviews a district court's factual findings relating to sentencing for clear error and reviews legal conclusions *de novo* . *See United States v. Spencer* , 178 F.3d 1365, 1367 (10th Cir. 1999). Suitor first contends the district court erred when it concluded he was responsible for the losses suffered by NationsBank from the counterfeit checks cashed by his co-conspirators on September 18, 1998 and September 19, 1998. The district court included these losses to arrive at the conclusion that the total loss exceeded $20,000, thereby

warranting a four-level increase to Suitor's base offense level pursuant to U.S.S.G. § 2F1.1(b)(1)(E).

"In a conspiracy case, loss is calculated on the basis of all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction . . . ." *United States v. Schluneger*, 184 F.3d 1154, 1159 (10th Cir. 1999) (quotation omitted). Count I of the superceding indictment charged Suitor with committing all the overt acts of September 18, 1998 and September 19, 1998. In his plea agreement, Suitor admitted that he "knowingly, willfully, and intentionally committed or caused to be committed the acts constituting the crimes alleged in Count I" of the superceding indictment. By admitting legal responsibility for the acts of his co-conspirators on September 18, 1998 and September 19, 1998, Suitor necessarily admitted that those acts were reasonably foreseeable and were undertaken in furtherance of the conspiracy. *See United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993) ("A conspiracy participant is legally liable for all reasonably foreseeable acts of his or her coconspirators in furtherance of the conspiracy"). This court, therefore, concludes that there is sufficient evidence in the record to support the district court's finding that Suitor was responsible for losses in excess of $20,000. Thus, Suitor's base offense

level was properly increased by four levels pursuant to U.S.S.G. § 2F1.1(b)(1)(E).

Suitor next argues that the district court erroneously found that he intentionally used the minors in the commission of the conspiracy offense. The sentencing guidelines provide that a defendant's base offense level should be increased two levels if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. § 3B1.4. The application notes to this sentencing guideline define the term "used or attempted to use" as encompassing "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id*. at cmt. n.1.

In his plea agreement, Suitor admitted that he "conspired with [Isbell], and two juvenile females . . . to manufacture and utter counterfeit checks drawn on the NationsBank accounts of two businesses . . . ." The district court relied on Suitor's admission that the minors were involved in the conspiracy to support its conclusion that Suitor used the minor girls in the commission of the offense.

On appeal, Suitor readily admits that the two minors were a part of the conspiracy. He argues, however, that he did not "use" the minors and that he never intentionally involved them in the conspiracy. Suitor contends that the government was required to produce some evidence that he actively involved the

minors in the conspiracy to support the imposition of the § 3B1.4 increase but failed to do so.

Pursuant to the sentencing guidelines, the two-level § 3B1.4 increase is only applicable if a defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction. *See* U.S.S.G. § 3B1.4, cmt. n.1. The evidence, therefore, must demonstrate more than the simple fact that Suitor was involved in a conspiracy with the minors. *See United States v. Parker*, 241 F.3d 1114, 1121 (9th Cir. 2001). Based on this court's review of the record, however, we conclude that sufficient evidence was presented to the district court to enable that court to conclude Suitor "used" the girls as that term is defined in § 3B1.4. Specifically, Isbell testified at the sentencing hearing that Suitor instructed all three co-conspirators, *inter alia*, on which banks to visit and how to dress when presenting the checks. Additionally, one of the minors testified before the grand jury [2] that Suitor counseled them on how to behave if they were caught while cashing a counterfeit check. The district court's finding that Suitor used the minors in the commission of the offense of conviction is supported by the record and, thus, is not clearly erroneous. The court properly increased Suitor's base offense level two levels pursuant to U.S.S.G. § 3B1.4.

---

[2]Portions of the minors' grand jury testimony were read into the record at Suitor's sentencing hearing.

Suitor next argues that the district court's finding that he was an organizer and leader of the conspiracy was clearly erroneous. The commentary to § 3B1.1 of the sentencing guidelines delineates factors to be considered by a sentencing court when evaluating whether a defendant is an organizer or leader. These factors include,

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4. The testimony presented at the sentencing hearing included statements made by Suitor's co-conspirators that Suitor: instructed them on how to use the computer software to print the checks and that Suitor's computer was used to print the checks; provided the account numbers used to print all the checks; furnished the paper upon which the checks were printed; instructed them on how to dress and conduct themselves when cashing the counterfeit checks; decided which banks to visit; advised them on what to expect when the check was presented to the teller; and warned them of the consequences if one or all were caught. The district court, after hearing this evidence, concluded that Suitor was a leader and organizer and increased his base offense level by two levels pursuant to § 3B1.1(c). The district court's finding that

Suitor was a leader or organizer is amply supported by the evidence presented at the sentencing hearing and, thus, is not clearly erroneous.

The district court also concluded that Suitor's testimony regarding the involvement of the minors in the conspiracy was not truthful and, accordingly, refused to decrease his offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Suitor contends that the district court's conclusion that he lied during his sentencing hearing was clearly erroneous because the district court improperly construed his legal arguments as untruthful statements. Suitor maintains that the court should have granted the acceptance of responsibility decrease.

The district court's finding that Suitor's testified untruthfully at the sentencing hearing is supported by the record. At the hearing, Suitor continually denied that he used the minors in the commission of the offense. As discussed, *supra*, however, the district court's conclusion to the contrary was not clearly erroneous. Consequently, the court's conclusion that Suitor acted in a manner inconsistent with acceptance of responsibility by continually denying relevant conduct is also not clearly erroneous. *See* U.S.S.G. § 3E1.1, cmt. n.1(a) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of

responsibility.").  This district court did not err in denying Suitor a decrease pursuant to § 3E1.1.

This court concludes that the factual findings made by the district court at Suitor's sentencing hearing are supported by the record and thus are not clearly erroneous.  Accordingly, the sentence imposed by the district court is hereby **affirmed** .