UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CLYDE FEASTER, JR., a/k/a Mike
Davis, a/k/a Timothy Banks, a/k/a
Donnie Smith,
*Defendant-Appellant.*

No. 00-4829

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CLYDE FEASTER, JR.,
*Defendant-Appellant.*

No. 01-4332

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Norman K. Moon, District Judge.
(CR-00-3, CR-01-2)

Argued: April 5, 2002

Decided: August 22, 2002

Before GREGORY, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curium opinion.

**COUNSEL**

**ARGUED:** Randy Virlin Cargill, MAGEE, FOSTER, GOLDSTEIN & SAYERS, P.C., Roanoke, Virginia, for Appellants. Joseph William Hooge Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** James R. Cromwell, VOGEL & CROM-WELL, Roanoke, Virginia, for Appellant Henry. John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Clyde Feaster, Jr. ("Feaster") pled guilty to various offenses arising from a check fraud conspiracy directed under his helm. The district court imposed an eighty month sentence. Feaster's appeal of the district court sentence presents two questions dealing with the application of the United States Sentencing Guidelines. The first issue presented is whether Feaster "used" a minor in the check fraud conspiracy qualifying him for a two-level Role in the Offense enhancement under Section 3B1.4 of the United States Sentencing Guidelines. The second question before the Court is whether the district court properly determined that the loss attributable to Feaster's offenses exceeded $500,000. In addition, Feaster has appealed the revocation of his supervised release from an earlier federal conviction in the wake of the aforementioned convictions arguing that the revocation violates the Double Jeopardy Clause of the Constitution.

Having consolidated Feaster's appeals, we affirm for the reasons set forth below. The Court finds that acting in his capacity as the ringleader of the charged conspiracy, Feaster affirmatively used a minor in the charged offense by directing the minor's role in the conspiracy and providing the minor with the tools necessary to perpetrate the var-

ious frauds involved in Feaster's scheme. Because Feaster affirmatively involved the minor at issue in his conspiracy, was fully aware of the minor's criminal conduct and actively encouraged the minor's participation, Feaster is liable for the sentencing enhancement under Section 3B1.4 of the United States Sentencing Guidelines for the use of a minor in the charged offenses. In addition, the Court finds that the district court properly determined the amount of loss attributable to Feaster by aggregating the estimated losses derived from accounts linked to fellow conspirators. Finally, the Court finds Feaster's Double Jeopardy claim without merit.

## I.

Beginning around August 1998, Clyde Feaster, Jr. started a conspiracy to defraud banks and various businesses by uttering counterfeit checks. (J.A. 293). Feaster and his girlfriend Melissa Hairston recruited dozens of individuals to assist them in this endeavor that was comprised of two schemes. The first scheme involved opening bank accounts with nominal deposits using false identification documents. Feaster received blank birth certificates and social security cards from a contact in New York, which he then distributed to his recruits to obtain fake driver's licenses from the North Carolina or the Virginia Department of Motor Vehicles. (J.A. 75-76). After obtaining bank accounts with the fake IDs, the co-conspirators were directed by Feaster to write bad checks for goods at various stores in the Danville, Virginia area. (J.A. 75-76). Those items would then be turned over to Feaster, who would hand them over to a fence for cash. (J.A. 79).

The other scheme led by Feaster involved counterfeit payroll checks. Counterfeiters based in New York would produce fake payroll checks modeled after real payroll checks from legitimate businesses in the Danville area. (J.A. 76). Feaster provided the recruited individuals with the fraudulent payroll checks and the co-conspirators would then use the fake IDs described above to cash the checks or purchase items with the checks. (J.A. 77-78). The individuals would hand over the cash or merchandise to Feaster. As part of the incentive for participating in both schemes, Feaster would pay a percentage of the "cut" to the recruits, as well as allow them to use some of the checks for their own personal use. (J.A. 79, 293-294).

On July 28, 2000, Feaster pled guilty to various charges arising from his participation in these schemes. Feaster pled guilty to conspiracy, and substantive counts of bank fraud in violation of 18 U.S.C. § 1344, mail fraud in violation of 18 U.S.C. § 1341, possession of false documents in violation of 18 U.S.C. § 1026(a)(6), and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). After pleading guilty, the probation officer submitted a pre-sentence report recommending that the judge impose a two-point Role in the Offense enhancement for use of a minor in connection with the charged offenses under Section 3B1.4 of the *United States Sentencing Guidelines* (2001) ("U.S.S.G."). The report also recommended that the amount of loss attributed against Feaster be found to be in excess of $500,000.

Feaster objected to both recommendations at his sentencing before the district court. First, Feaster challenged the two-point enhancement for use of a minor in connection with the charged offenses. At the hearing, Inspector David McKinney testified that during his investigation of the conspiracy he identified an individual named LaMark Moore as a co-conspirator who used fake IDs to cash the counterfeit payroll checks in the fall of 1999. (J.A. 149, 209). McKinney testified that he believed Moore to have been seventeen at the time because he was later charged in state court, convicted and given a sentence as a juvenile. (J.A. 209). Moore had been approached by his girlfriend to become involved in the conspiracy. (J.A. 209). Brent Henry, another conspirator, eventually recruited Moore. (J.A. 33, 209). McKinney further testified that Moore understood Feaster to be the ringleader. (J.A. 210). Moore would occasionally go out to eat with Feaster. (J.A. 210, 212). Moore indicated that Feaster was the source of the fake identification documents. (J.A. 210). Feaster also would provide the list of items to purchase to Henry, who would then provide the list to Moore. (J.A. 210-211). After cashing the counterfeit checks, Moore would purchase the items listed. (J.A. 210-211). The goods would then go back to Feaster or the fence and Moore would occasionally accompany their delivery to a storage unit in Danville. (J.A. 211). Similarly, Feaster would provide Henry with the counterfeit payroll checks and Henry would provide them to Moore. (J.A. 211-12).

McKinney also testified that Moore never stated that Feaster had recruited him or asked Henry or anyone else to recruit Moore. (J.A.

213-14). Further, there was no evidence that Feaster knew Moore's age. (J.A. 214). Although Moore did not appear to be a minor to McKinney, he considered him to appear young. (J.A. 148). McKinney recounted an incident where Moore indicated that he could not cash a fake check because the clerk did not think he was 24, the age on the fake ID. (J.A. 148).

Based on this record, the district court found that Feaster had used a minor in connection with the charged offenses under Section 3B1.4. (J.A. 220-21). Specifically, the trial court found that

> [when] you hire people, you get involved, you know, you start a criminal enterprise, you deal with people at your peril. And you take these young people out and maybe you have to card them like, you know, the 7-eleven to sell them beer or cigarettes. But I think this law is to encourage people who engage in criminal activity to be careful about what they're doing and who they deal with, particularly when you're dealing with young people.

(J.A. 221). Applying the two-point offense level enhancement for using a minor to commit a crime, the district court imposed an eighty month sentence.

Feaster also challenged the total loss attributable to his offenses. Specifically, Feaster objected to the probation officer's finding that the loss exceeded $500,000. (J.A. 179). Inspector McKinney testified that the fraudulent checks used by the conspirators to purchase items totaled $432,878.34. (J.A. 185). Inspector McKinney calculated this sum by aggregating the face amounts of the checks negotiated by the conspirators. (J.A. 182-84). As to the counterfeit payroll checks, Inspector McKinney testified that the checks that were reported and compiled totaled $110,663.55. (J.A. 187). Based on this evidence, the district court found that the total loss attributable to Feaster was more than $500,000. (J.A. 208).

Shortly after the sentencing hearing, the district court conducted a suspended sentence revocation hearing. Apparently, Feaster was still on supervised release from the commission of a crime in the Eastern District of New York at the time he committed the instant offenses.

(J.A. 17). Based on the evidence presented at the hearing, the district court imposed a fourteen-month custodial sentence. (J.A. 27). Feaster timely appealed both decisions.

## II.

Feaster's primary contention is that the district court erred in holding that he used a minor in connection with the offenses charged under Section 3B1.4 of the Sentencing Guidelines. Because the factual findings of the district court concerning Feaster's use of a minor are largely uncontested, we review the district court's application of Section 3B1.4 *de novo*. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989) (interpretation of Guidelines reviewed *de novo*); *United States v. McClain*, 252 F.3d 1279, 1284 (11th Cir. 2001) (reviewing district court's interpretation of Section 3B1.4 *de novo*).

## A.

Analysis of Section 3B1.4 properly begins with the plain language of the Guideline itself. *See United States v. Ramsey*, 237 F.3d 853, 858 (7th Cir. 2001) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). Section 3B1.4, entitled "Using a Minor to Commit a Crime," provides for a two-level sentence enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4. The commentary to Section 3B1.4 defines "[u]sed or attempted to use" as "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* cmt. n.1.; *see Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that Sentencing Guidelines Commentary is "authoritative unless it violates the Constitution or federal statute," or is otherwise inconsistent with the Guidelines). The dictionary defines "use" as "to make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service; especially to attain an end." BLACK'S LAW DICTIONARY 1072 (abridged 6th Ed. 1991).

The plain language of Section 3B1.4 clearly indicates that an affirmative act to involve a minor in the offense charged is required. *See*

*Ramsey*, 237 F.3d at 860 (holding that "§ 3B1.4 is applicable where the defendant affirmatively involved the minor in the commission of the crime."). In light of the commentary to section 3B1.4, the Court reads the term "use" broadly to include any affirmative act by the defendant to direct, command, encourage, intimidate, counsel, train, procure, recruit, solicit, or otherwise engage a minor with respect to the charged offense. *See id.*; *United States v. Suitor*, 253 F.3d 1206, 1210 (10th Cir. 2001) (holding that section 3B1.4 enhancement "applicable if a defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction.").

B.

In light of the foregoing, we affirm the district court's imposition of the two-level enhancement under section 3B1.4 because Feaster used a minor in the charged conspiracy. The district court found that Feaster was the ringleader of the criminal enterprise. Feaster and his co-conspirators were in the practice of recruiting dozens of individuals to participate in the conspiracy. Feaster, through his lieutenant Henry, recruited Moore as well as other individuals consistent with this practice. Once recruited, Feaster commanded Moore through Henry and provided Moore with the tools necessary to participate in the conspiracy such as the false identification documents, the payroll checks and the lists of items to be purchased with the checks. As directed by Feaster, Moore purchased the goods with the counterfeit checks and handed the items over to Feaster or the fence. The fact that Feaster primarily directed Moore through Henry is of little moment. Henry was Feaster's underling, serving only as the middleman communicating Feaster's commands. Feaster was fully aware of Moore's criminal conduct. He actively encouraged Moore's participation by paying him for his criminal acts and going out to eat with him. Finally, the fact that Feaster may have believed Moore to be an adult is irrelevant to whether he "used" a minor under the terms of Section 3B1.4. *See McClain*, 252 F.3d at 1286 (recognizing that Section 3B1.4 does not require that a defendant have knowledge that the individual is a minor for the enhancement to apply).

In sum, Feaster affirmatively used a minor in the commission of the charged offense by supervising Moore's participation in the conspiracy and directing, encouraging and otherwise engaging him in the

crime. *See Suitor*, 253 F.3d at 1210 (affirming application of use of minor enhancement to defendant in fraud conspiracy who instructed minor co-conspirators, "*inter alia*, on which banks to visit and how to dress when presenting the checks."). The district court therefore correctly found that as the leader of the conspiracy, Feaster involved a minor by his own affirmative acts and properly applied the sentence enhancement under section 3B1.4.

## III.

Feaster's remaining claims warrant little discussion. Feaster challenges the district court's finding that the loss attributable to Feaster's offenses exceeded $500,000. We review the district court's factual findings for clear error. *United States v. Murphy*, 254 F.3d 511, 513 (4th Cir. 2001); *Daughtrey*, 874 F.2d at 217. Having reviewed the district court's conclusion, we find no clear error as to the court's assessment of over $500,000 in losses to Feaster's stewardship of the conspiracy in question. The record adequately demonstrates that the losses were linked to accounts used by Feaster's co-conspirators. The district court's attribution of the full amount of loss related to the accounts used by Feaster's organization represents a reasonable estimate of loss. *See United States v. Rothberg*, 954 F.2d 217, 219 (4th Cir. 1992). Accordingly, the district court's loss determination was not clearly erroneous and we affirm.

Finally, Feaster appeals the district court's revocation of his supervised release and imposing an additional fourteen months' confinement. Feaster contends that revocation of his supervised release as a result of his continued criminal activity for which he was independently charged and convicted violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Counsel for the Appellant filed a brief pursuant to *Anders v. California*, representing that there exist no arguable issues of merit in this appeal. 386 U.S. 738, 744 (1967). Counsel nevertheless addressed whether revocation violated the Double Jeopardy clause. We have previously considered this issue and found it meritless. *See United v. Woodrup*, 86 F.3d 369, 363 (4th Cir. 1996) ("the Double Jeopardy Clause does not prohibit the government from criminally prosecuting and punishing an offense which has formed the basis for revocation of supervised release."). In accordance with *Anders*, we have reviewed the entire record on this

issue and find no reversible error. Therefore, the district court properly imposed a fourteen months sentence for Feaster violating his supervised release.

## IV.

For the foregoing reasons, we affirm both Feaster's sentence and the revocation of his supervised release.

*AFFIRMED*