**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 04-4121 |
| v. | D. Utah |
| MICHAEL ANTHONY HAMBELTON, also known as Michael Chanthachack, also known as Anthony Chanthachack, also known as Michael Hambleton, also known as Anthony Hambleton, | (D.C. No. 2:03-CR-00670-001-DAK) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

Michael Anthony Hambelton pleaded guilty to being a felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal he challenges his

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

sentence. He alleges that the district court erred in applying a four-level enhancement after finding that the crime of conviction was committed in connection with another felony, and in denying credit for acceptance of responsibility. He also alleges a Sixth Amendment violation because his sentence was enhanced based on facts found by the district court. We affirm.

## Background

On July 19, 2003, a shooting occurred at a party in Sandy, Utah. Information obtained by the police, including an eyewitness identification, led them to suspect that Mr. Hambelton, a convicted felon out on parole, was the shooter. On July 29, 2003, police and probation officers conducted a search of Mr. Hambelton's home. A backpack containing three firearms was found next to his bed. Ballistics tests showed that one of the guns had been used in the shooting.

Mr. Hambelton was charged and pleaded guilty to a one-count indictment alleging that "[o]n or about July 19, 2003, . . .[Mr.] Hambelton, . . . having been convicted of a crime punishable by imprisonment for more than one (1) year, did knowingly possess in and affecting interstate commerce, firearms and ammunition, to wit: three Smith & Wesson .45 caliber handguns and 6 rounds of American .45 caliber ammunition; all in violation of 18 U.S.C. § 922(g)(1)." The presentence report (PSR) suggested a base offense level of 20 and a criminal

history category of III. It further suggested (1) a two-level increase because the offense involved three or more firearms, (2) a two-level increase because the firearms were stolen, and (3) a four-level increase because the firearms were used in connection with another felony, specifically, the July 19, 2003, shooting incident. The PSR also said that Mr. Hambelton should not be awarded a reduction for acceptance of responsibility because he falsely denied being involved in the shooting.

Mr. Hambelton filed an objection to the PSR denying that he was the shooter. He also argued that the offense of conviction (felon in possession) should not be deemed to be "in connection with" the shooting because it occurred 10 days before the guns were discovered and he was arrested. At the sentencing hearing Detective Jeffery Duval testified that a witness to the shooting incident, James Taala, had told him that the shooter's name was "Anthony," that the shooter lived near 3500 West and 5400 South, that the shooter was a member of a local gang, and that the shooter's brother had recently been arrested. From this information Detective Duval was able to identify Mr. Hambelton as a suspect. A second witness, Greg Love, identified Mr. Hambelton as the shooter from a photo lineup. Finally, ballistics tests matched one of Mr. Hambelton's guns to the shooting. The district court rejected his objections, adopted the findings of the PSR, and sentenced him to 97 months in prison.

**DISCUSSION**

"We review a district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error." *United States v. Walters*, 269 F.3d 1207, 1214 (10th Cir. 2001). Mr. Hambelton first argues that the district court erred in finding that his illegal possession of firearms was "in connection with another felony offense." United States Sentencing Guidelines (USSG) 2K2.1(b)(5). He contends that USSG § 2K2.1(b)(5) should have a time limit, and that the fact that he was not found with the guns until 10 days after the shooting establishes that he did not possess the guns in connection with the shooting. This argument ignores two undisputed facts. First, the indictment to which he pleaded guilty specifically charged possession "[o]n or about July 19, 2003," the date of the shooting; and second, ballistics tests identified one of the guns found in his home as the gun used in the shooting. In addition, an eyewitness picked Mr. Hambelton out of a photo line-up, (although a second witness could not identify him as the shooter). This evidence was more than sufficient for the district court to find that the possession of the guns was in connection with the shooting.

Mr. Hambelton's second argument is foreclosed by the same facts. He argues that the district court erred in refusing to reduce his sentence for acceptance of responsibility because he falsely denied relevant conduct—i.e., that

-4-

he was the shooter. Although a defendant may be eligible for an acceptance-of-responsibility reduction without admitting relevant conduct "beyond the offense of conviction," the court can refuse to grant the reduction when the defendant "falsely denies, or frivolously contests, relevant conduct that the court determines to be true . . . ;" USSG 3E1.1(a) cmt. n.1(a). Mr. Hambelton was identified as the shooter by an eyewitness, the gun used in the shooting was found in his home, and the indictment to which he pleaded guilty charged him with possession of the gun on or about the date of the shooting. Yet he denied his involvement in the shooting. Under these circumstances the district court's conclusion that he acted in a manner inconsistent with acceptance of responsibility was not clearly erroneous. *See United States v. Suitor*, 253 F.3d 1206, 1211 (10th Cir. 2001) (acceptance of responsibility denied when defendant testified untruthfully about relevant conduct).

Finally, Mr. Hambelton argues that we should remand for resentencing in light of *Blakely v. Washington*, 542 U.S. 296 (2004), which was applied to the Sentencing Guidelines in *United States v. Booker*, 125 S. Ct. 738 (2005). He concedes that the issue was not raised below, so we review only for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public

reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (internal quotation marks omitted).

Although Mr. Hambelton does not specifically identify any alleged error, we presume that the alleged error was the mandatory application of the guidelines and the court's finding (1) that the firearms were stolen and (2) that the firearms were used in connection with the July 19, 2003, shooting.  (The sentence was also enhanced because the offense involved three or more firearms.  But this fact was charged in the indictment and was therefore admitted by Mr. Hambelton in pleading guilty to the indictment.)

"A district court commits constitutional *Booker* error when it applies the Guidelines in a mandatory fashion, makes factual findings (other than the fact of prior convictions), and imposes a sentence above the maximum that would apply in the absence of such findings." *United States v. Clark*, 415 F.3d 1234, 1238 (10th Cir. 2005) (internal quotation marks and emphasis omitted).  Constitutional *Booker* error satisfies the first two prongs of the plain-error test.  *Id*. at 1240.  The burden of satisfying the third prong is on the defendant.  *Id*.  He can meet this burden by showing that the district court would impose a sentence outside the applicable guidelines range if the case were remanded, or by showing a reasonable probability that a jury, applying the beyond-a-reasonable-doubt standard, would not have found the facts necessary to enhance the sentence.  *Id*.

If the defendant can satisfy the third prong, the fourth prong still requires him to show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (internal quotation marks omitted). Although we conduct this review less exactingly in cases of constitutional *Booker* error, *see United States v. Dazey*, 403 F.3d. 1147, 1174 (10th Cir. 2005), it is still a "demanding standard" *Gonzalez-Huerta*, 403 F.3d at 737.

Because the fourth prong imposes such a high burden, these cases are often resolved at the fourth prong rather than the third. *Id*. at 736 ("We need not determine whether Mr. Gonzalez-Huerta can satisfy this burden because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief."). "[S]entencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended." *United States v. Lawrence*, 405 F.3d 888, 906 (10th Cir. 2005) (internal quotation marks omitted). Mr. Hambelton has not even attempted to satisfy this burden. His briefing on this issue consists of two short paragraphs that do no more than allege the error without setting forth any facts or supporting argument. He does not argue that the district court would impose a lower sentence on remand, and there is nothing in the record to indicate that this might be the case. *See id*. at 907 ("Whether the district court would simply reimpose the same sentence on remand, or whether

instead the sentence would likely change to a significant degree if [the case] were returned to the district court for discretionary resentencing, is one factor to consider in determining whether the defendant can satisfy the fourth plain-error prong." (brackets in original, internal quotation marks omitted)). Additionally, we note that although the PSR stated that the guns were stolen, Mr. Hambelton did not object to the PSR on this basis, or place any argument or facts into the record to contradict the PSR. *Cf. Dazey*, 403 F.3d at 1178 (concluding that the fourth prong was met, in part, because the defendant "vigorously contested the judge-found facts that enhanced his sentence"). The sole objection to the PSR was that Mr. Hambelton was not the shooter at the July 19, 2003, incident. But, as previously noted, there was compelling evidence that he was. Mr. Hambelton has not demonstrated that the *Booker* error in any way "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzales-Huerta*, 403 F.3d at 732 (internal quotation marks omitted). We therefore deny relief on this ground.

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge