**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SERGIO SEANEZ,

      Defendant-Appellant.

No. 06-2267
(D.C. No. 06-CR-94-01-JB)
(D. of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Appellant-Defendant Sergio Seanez pleaded guilty to conspiracy, and

possession with intent to distribute more than 100 kilograms of marijuana, in

violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. The

district court sentenced Seanez to serve a total of 97 months' imprisonment, to be

followed by a four-year term of supervised release. Seanez now challenges his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence on appeal, alleging error with three distinct sentencing enhancements that together total a six-level upward adjustment. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We conclude that the district court properly applied the United States Sentencing Guidelines ("Guidelines") and affirm the sentence.

## I. Background

On October 24, 2005, the Drug Enforcement Administration ("DEA") received information from a confidential informant concerning a possible "stash house" in Chaparral, New Mexico. The informant claimed that "Homie," later identified as Seanez, acted as the leader of an organization that distributed marijuana throughout the United States. He reportedly received kilogram quantities of marijuana from an unidentified person from Mexico, stored the drugs at his residence in New Mexico, and arranged for nationwide distribution of the drugs.

The informant also provided the DEA agents with the following details: the home address for Seanez; the amount of marijuana Seanez received (approximately 700 pounds); the date that he received it, October 23, 2005; the location where Seanez stored the marijuana, a recreational vehicle ("RV") in his backyard; Seanez's plan to conceal the marijuana in a false floor compartment of a boat, which was also located in his backyard, with the help of a Hispanic male known as "Flaco," later identified as Nolberto Lopez-Pinedo; and the fact that the

boat was to be towed to an unknown location by an unknown individual the following day.

Based upon this tip, DEA agents established a surveillance of the house. They observed the RV and boat parked in the back of the residence and witnessed Seanez and Lopez-Pinedo working on the boat. The agents next witnessed Seanez bring a blue bundle from his residence to Lopez-Pinedo who placed the bundle inside the boat. The agents watched Seanez take a similar action approximately six times, delivering a blue bundle from his residence to Lopez-Pinedo at the boat. Then the pair got in a car and left the residence.

The DEA agents followed the men and contacted the Otero County Sheriff's Department and requested a traffic stop of the vehicle. When asked by the DEA agents about his identity once his vehicle was stopped, Seanez provided a false New Mexico driver's license with the name Arturo Cisneros. After the DEA explained that its agents had observed the two men loading suspected bundles of marijuana into the boat, the agents asked for the names of any others involved, but Seanez declined to offer names. Seanez consented to a search of his residence, but he wanted to tell his family good-bye.

Upon returning to the residence, the agents obtained the permission of Seanez's wife to search the property. The search revealed eight bundles of marijuana in the boat and 25 bundles of marijuana inside the RV, along with a weight scale and 10 plastic bags with a plaid design used to hold the drug

bundles. Inside the residence, the agents found two plastic bags in the washer and dryer, identical to those in the RV, and an unloaded Taurus .357 Magnum revolver, in plain view, on the entertainment stand in the master bedroom.

The agents talked to Seanez's 12-year-old daughter, one of his nine children, who informed the agents that she had helped her father load marijuana into the boat. The agents tested the green leafy substance inside the recovered bundles and confirmed that the substance was marijuana. A total net weight of 231.2 kilograms of marijuana was discovered.

According to Lopez-Pinedo's post-arrest statement, Seanez hired him to install a false compartment in the boat for $1,000. Lopez-Pinedo corroborated the informant's information by stating that the boat was supposed to be towed to an undisclosed location on October 25, 2005, and added that a man named "Daniel" was hired by "Homie" (Seanez) to tow the boat. Lopez-Pinedo further noted that Seanez had picked up the marijuana on October 23, 2005, in El Paso, Texas, and had transported the drugs to his residence, where he stored them, until moving the drugs onto the boat. Seanez provided little in the way of a post-arrest statement except, "[t]hat's the way the game is played." R. vol. I, Presentence Investigation Report (PSR) ¶ 14. He maintained that his name was Arturo Cisneros until fingerprinting revealed his true identity as Sergio Seanez.

On January 18, 2006, a two count Indictment was filed in the United States District Court for the District of New Mexico. Seanez pleaded guilty to both

counts as charged on March 30, 2006. A Presentence Investigation Report ("PSR") was then prepared, recommending several sentencing enhancements under the Guidelines. Specifically, the PSR included a two-level enhancement for possession of a dangerous weapon; a two-level enhancement for his role as an organizer, leader and manager of the drug operation; and a two-level enhancement for using a minor, his 12-year-old daughter, to commit the offense. *See generally* U.S.S.G. §§ 2D1.1(b)(1)(possession of a dangerous weapon), 3B1.1(c)(leadership role), 3B1.4 (using a minor). In July of 2006, Seanez filed objections to all three enhancements. The Probation Office prepared a PSR addendum that noted and responded to the objections.

At Seanez's sentencing on August 23, 2006, the district court accepted the PSR's recommendations, which left Seanez with an offense level of 29, and a criminal history category II. The recommended guideline imprisonment range was 97 to 121 months. Seanez was sentenced to 97 months on each count, to be served concurrently. He now appeals, asserting that the district court erred in imposing these enhancements.

## II. Discussion

"Even after *Booker*, when reviewing a district court's application of the Sentencing Guidelines, we review legal questions *de novo* and . . . any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th

Cir. 2006) (internal quotation marks omitted; quoting *United States v. Martinez*, 418 F.3d 1130, 1133 (10th Cir. 2005)).  The government bears the burden of proving sentencing enhancements by a preponderance of the evidence.  *See, e.g., United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990).  The court's ultimate sentencing decision is reviewed for reasonableness.  *See United States v. Kristl*, 437 F.3d 1050, 1053-54 (10th Cir. 2006).

### *A.  Possession of a Firearm*

Seanez challenges the two-level enhancement for possession of a dangerous weapon.  *See* U.S.S.G. § 2D1.1(b)(1).  Seanez argues that the mere presence of a firearm does not trigger the two-level increase.  Seanez also emphasizes that the gun was unloaded and not mentioned by the informant.

Our precedent demonstrates that § 2D1.1(b)(1) applies if the government can prove by a preponderance of the evidence that a weapon was present, unless the defendant can show "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3; *see United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th Cir. 2004).  Possession under § 2D1.1(b)(1) can be "satisfied by showing mere proximity to the offense." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997), *cert. denied*, 522 U.S. 1141 (1998).  The government can meet its burden of demonstrating possession by showing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Zavalza-Rodriguez*, 379 F.3d at

1185 (internal quotation marks omitted; quoting *United States v. Pompey*, 264 F.3d 1176, 1180 (10th Cir. 2001)); *see United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005). That means the government need only show the dangerous weapon was located in the general vicinity of where part of the drug activity occurred. *See United States v. Alexander*, 292 F.3d 1226, 1229, 1231 (10th Cir. 2002). If such possession is established, then the burden shifts to the defendant to show that "it is clearly improbable the weapon was connected with the offense." *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).

In this instance, the government offered proof of possession sufficient to trigger the two-level enhancement by showing that Seanez had both the drugs and the gun easily accessible inside his residence, which he described as a "two-bedroom mobile home trailer." *See* R. vol. III, at 6. Consequently, there was proximity between the drugs and the gun. Seanez has pointed to no credible evidence to demonstrate it is clearly improbable that the gun was connected to his drug trafficking activity. Seanez does not challenge that the gun is his; and, indeed, he concedes that evidence links the drugs to his home where the gun was found. Aplt. Br. at 12 ("While there is some evidence that the packages of marijuana had been stored for less than one day in Mr. Seanez's house, there is no evidence that the marijuana was stored in the master bedroom.").

Nothing in our case law or the Guidelines require that the drugs and gun be found in the same room of a residence. Despite Seanez's objections, the facts of

this case directly implicate the concerns that the Guidelines enhancement was designed to address. *See* U.S.S.G. § 2D1.1 cmt. n.3 ("The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons."). The Guidelines do not distinguish between a loaded or unloaded weapon. Neither should we: both can cause fear and escalate the danger associated with a drug enterprise. Seanez has not offered us any reason to believe that the firearm was unconnected to his criminal conduct. We conclude that the government satisfied its burden as to the two-level enhancement for firearm possession.

### B. Leadership Role

Seanez challenges the two-level upward adjustment for being "an organizer, leader, [and] manager" of the marijuana distribution scheme. *See* U.S.S.G. § 3B1.1(c). He asserts that the evidence is insufficient to support the increase because the only evidence accusing Seanez of holding a leadership role comes from individuals who are motivated to place the blame elsewhere. Aplt. Br. at 16. In fact, Seanez claims that as far as the informant knew "Flaco" could have been "Homie's" boss. *Id.* at 15. We disagree.

The Guidelines call for the enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). The Guidelines commentary "delineates factors to be considered by a sentencing court when evaluating whether a defendant is an organizer or leader." *United States v. Suitor*,

253 F.3d 1206, 1210 (10th Cir. 2001). They include the nature of a defendant's participation in the offense, and, more specifically, the extent to which the defendant exercised decision-making authority, planned and organized the offense, recruited accomplices, and exhibited control and authority over others. *See* U.S.S.G. § 3B1.1 cmt. n.4. More than one person involved in a "criminal association or conspiracy" can qualify for the enhancement (e.g., there can be more than one leader of a criminal conspiracy). *Id.* A defendant's sphere of influence, however, need not be extensive; he may operate in this heightened capacity as to "one *or* more other participants." *Id.* at cmt. n.2 (emphasis added).

Two sources independently pointed to Seanez as the leader, organizer, and manager of the drug trafficking. While a confidential informant's credibility should be carefully scrutinized, the informant's information proved to be quite accurate. In significant respects, the information was consistent with the agents' observations at Seanez's residence and the subsequent admissions of Seanez's accomplice, Lopez-Pinedo.

It is readily apparent from Lopez-Pinedo's statement to the agents that Seanez recruited Lopez-Pinedo to assist Seanez in concealing the marijuana; that Seanez was the person who was going to pay Lopez-Pinedo for his work; and that Seanez also had recruited and agreed to pay another individual who was given the task of transporting the marijuana. Furthermore, Seanez exercised ultimate control over the subject matter of the criminal enterprise. The marijuana was

being stored at Seanez's home and was being concealed in a boat on his property.

In sum, we have no evidence suggesting that Seanez was anything other than a leader, organizer, and manager in this criminal conspiracy. The district court did not err in finding the § 3B1.1(c) enhancement to be appropriate.

### C. Use of a Minor

Finally, Seanez objects to the sentence enhancement for using a minor in his criminal activity. The Guidelines require a two-level upward adjustment "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." *See* U.S.S.G. § 3B1.4. This enhancement is applicable when a defendant affirmatively directs, trains, intimidates, or encourages a minor to participate in the crime. *Id.* at cmt. n.1; *see Suitor*, 253 F.3d at 1210.

According to the PSR, Seanez's 12-year-old daughter told agents searching the family's residence that she had helped her father load marijuana into the boat. When he filed his PSR objections, Seanez put forward a sworn affidavit of his daughter, dated July 27, 2006, in which she claimed to have "never admitted to any law enforcement officer that I helped my father load the marijuana in the boat," and, as a factual matter, she denied ever engaging in such loading "at my father's direction." Doc. 45, Attachment A, ¶ 4.

Although Seanez correctly identifies a weakness in the government's proof concerning this enhancement, ultimately we conclude that the district court did

not err in finding that the government carried its burden. In particular, record evidence supports the court's factual findings concerning the statement of Seanez's daughter.

On the one hand, the district court had the agents' statement reported in the PSR (a statement the agents did not disavow) that at the time of the arrest, Seanez's daughter told them she assisted her father in loading marijuana onto the boat. And, on the other hand, it had a sworn affidavit of the daughter given approximately 10 months after the events at issue in which she denied making the statement to the agents. We cannot conclude that the district court clearly erred in crediting the first statement. It was reported by federal agents presumably engaged in the ordinary course of their duties and was represented by them as being uttered at the time of the events at issue, when one might reasonably expect that the daughter's memory would be better than at the time she produced the affidavit. Significantly, the first statement also reportedly was made by the daughter *before* she had an opportunity to seriously consider the consequences of providing information that was contrary to her father's interests.

The district court was not required to shelve its common sense and worldly knowledge, especially concerning the tensions and motivations that underlie human conduct, in deciding, on balance, which statement of the daughter to

believe.[2]  Indeed, the district court emphasized the importance of the timing of the daughter's statement when deciding to employ the § 3B1.4 enhancement. *See* R. vol. III, at 5 (where the court inquired at the sentencing hearing if the daughter gave the statement at the time of the arrest and, upon receiving confirmation of that fact, noted "[t]hat's good enough for me").  Accordingly, we discern no clear error in the district court's fact-finding concerning this enhancement.

### III.  Conclusion

We conclude that the district court's factual findings regarding the disputed Guidelines enhancements were supported by the record and, therefore, it did not clearly err. Furthermore, Seanez's conduct fit squarely into the plain language of the applicable Guidelines.  Accordingly, we **AFFIRM** the sentence.

Entered for the Court


Jerome A. Holmes
Circuit Judge

---

[2]  In affirming a district court's imposition of an obstruction-of-justice enhancement in an unpublished opinion, we expressed similar thoughts, noting that the court "in applying knowledge of the ways of the world and the application of common sense" could permissibly find that defendant's testimony regarding his knowledge of a weapon was "too preposterous for belief." *United States v. Bolden*, 23 Fed. App'x 900, 905 (10th Cir. 2001).