KELLY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s order and judgment with the exception of the two-level sentencing enhancement applied to Defendants Dr. Mark Hopkins and Sharon Hopkins for the use of minors in the commission of the offenses. U.S.S.G. § 3B1.4. I would remand for resentencing.
The PSR suggests that the children signed a “Notice To and Acceptance By Capital Unit Certificate Holders” for 16.66 units of the Guadalupe Medical Services Trust [“GMST”] on August 9, 1997. 2 R. 7-8, ¶ 20; 21-22, ¶ 54; 7 Supp. R. 3. Prior to 1997, Dr. Hopkins worked as an independent contractor for his own subchapter S corporation, Guadalupe Emergency Medical Services [“GEMS”], and both he and the corporation filed tax returns. 2 R. 8, ¶ 22. In 1997, he changed his business from GEMS to GMST in an unsuccessful effort to avoid IRS levies against his employers. Id. at ¶¶ 22-23. Indeed, according to the PSR, this appears to be the only business for GMST. Id. at ¶ 23. In December 1998, Dr. Hopkins began working for the Schumacher Group as an independent contractor and directed that his compensation be paid to Shalom Enterprises, Inc. Id. at 8-9, ¶¶ 24-26. Some of this compensation apparently was then directed to GMST. Id. at 9, ¶ 27; 10.[1]
At the sentencing hearing, Mrs. Hopkins objected to the enhancement because there was no “actual involvement of the child in the criminal act” and the signatures on the trust documents in no way facilitated or “contributed to the commission of the crime.” 1 Supp. R. 13, 11. Although she conceded she used “sophisticated means” to avoid payment, Mrs. Hopkins argued that “the use of the trust does not equate to the use of the children whose signatures may appear on those documents.” Id. at 9-10; see also id. at 10-11 (“The children were not manipulated regarding anything having to do with taxes. [Children are named in trusts] time and time again every day....”). Dr. Hopkins also raised an *786 objection to the application of this enhancement at his sentencing. See 1 Supp. R. 77.[2] The district court nevertheless concluded that the minors “were noted on these trusts to facilitate and accomplish [the evasion of taxes],” and therefore applied the enhancement to both Defendants. 1 Supp. R. 14, 94. This conclusion is erroneous.
No evidence, let alone logic, suggests that the children’s signatures as beneficiaries of GMST even remotely facilitated concealment of income and tax evasion. The “use of a minor” enhancement is appropriate if “the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense.” U.S.S.G. § 3B1.4. As the court notes, “using” includes “directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting.” Id. cmt. n. 1. “Proof that the defendant and the minor participant were mere co-conspirators or confederates is not sufficient to establish this enhancement.” United States v. Peña-Hermosillo, 522 F.3d 1108, 1114 (10th Cir.2008). Neither is “mere presence” of a minor during unlawful activity. See United States v. Molina, 469 F.3d 408, 414-15 (5th Cir.2006). Generally, courts have found the enhancement applies only where “a defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction.” United States v. Suitor, 253 F.3d 1206, 1210 (10th Cir.2001). Designating a minor a trust beneficiary certainly would not qualify as facilitating the concealment of income or tax evasion — nothing suggests that these minors were empowered to direct income into or manage the trust or its distributions. See II Aplee. Addendum of Exhibits, IRS-439-51. Nor should the minors’ signatures acknowledging their status as beneficiaries do so either.
To be sure, the enhancement does not require knowledge on behalf of the minor or active involvement. See United States v. Tran, 285 F.3d 934, 937-38 (10th Cir.2002); United States v. Castro-Hernandez, 258 F.3d 1057, 1060 (9th Cir.2001). Rather, the relevant inquiry is “whether [Dr. or Mrs. Hopkins] took affirmative acts to involve the minorfs] in the commission of the offense.” United States v. Rivera, 248 F.3d 677, 682 (7th Cir.2001). This inquiry fulfills the enhancement’s purpose of “protecting] minors as a class from being solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used to commit crime.” United States v. McClain, 252 F.3d 1279, 1286 (11th Cir.2001) (quotation omitted). Nothing suggests that Dr. or Mrs. Hopkins “used” these minors, or even that they somehow became their co-conspirators or confederates in the commission of the offenses.
The cases the court relies upon are inap-posite. For example, in Suitor, this court found the application of the enhancement appropriate where the defendant admitted that he conspired with two minors to manufacture and utter counterfeit checks and the participants testified to the instructions the defendant gave them for presenting the checks. 253 F.3d at 1210. No such conspiracy or participation involving the minors was proven here. In United States v. Keck, the defendant actually used his minor daughter to wire money for drug sales, thus involving her in the commission of the offense. 643 F.3d 789, 792, 800 (10th Cir.2011). No such use or partic *787 ipation exists here. Creating a trust with minor beneficiaries simply is not tantamount to involving minors in the commission of a crime.
Nor is it tantamount to using the minors to avoid detection. See, e.g., United States v. Mata, 624 F.3d 170, 175 (5th Cir.2010) (holding that a defendant who brings along a minor during the commission of a crime as a diversionary tactic is subject to the enhancement). Nothing indicates that the Hopkins used their children to avoid being held responsible for tax evasion after the trust was created. At best, the trust — not the children — may have lowered suspicions or concealed the movement of funds. The court’s Order and Judgment opinion says as much: “The trusts were used by Sharon Hopkins to evade taxes.” Order and Judgment at 26-27 n. 11 (emphasis added). The court’s ipse dixit that having the minors sign an acknowledgment of their status as beneficiaries to lend legitimacy to the trusts (and hide the true purpose of the trusts) is the kind of pronouncement that ought to rest on evidence because it certainly does not rest on trust law.
The difficulty with applying the enhancement in these circumstances is that it suggests something inappropriate about naming minors as trust beneficiaries. “If Congress meant to punish persons who committed an offense that in any way involved a minor, it would have provided so explicitly instead of employing the ‘used or attempted to use’ language.” United States v. Parker, 241 F.3d 1114, 1121 (9th Cir.2001). Because application of the enhancement conflicts with the plain meaning of the guideline, I would remand for resen-tencing of both Dr. and Mrs. Hopkins on this issue. See United States v. Maestas, 642 F.3d 1315, 1319 (10th Cir.2011).

. Record evidence of the children’s signatures appears in II Aplee. Addendum of Exhibits ("Notice To and Acceptance by Capital Unit Certificate Holders”). This document indicates the same date, units, and children identified in the PSR but is apparently for the Grace Trust rather than the GMST. Because the Hopkins used the Grace Trust in the same way they used the GMST, see 2 R. 10, the analysis and conclusion remain unchanged.

. Although his initial briefing on appeal does not raise this argument, Dr. Hopkins filed a motion for leave to file a pro se supplemental brief to address solely this issue. This court has denied the motion. See supra Order and Judgment at Part IV.