**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J.  Fisher, Jr.
Clerk

Jane B. Howell
Chief Deputy Clerk

April 4, 2002

**TO:** ALL RECIPIENTS OF THE OPINION
**RE:** 01-2093, United States v. Tran
Filed February 27, 2002


Per the attached order, please be advised the opinion filed February 27, 2002 is vacated.  A copy of the new opinion is attached for your convenience. Changes can be found at page 4, and at page 10, Section C.


Sincerely,
Patrick Fisher, Clerk of Court


By:
Deputy Clerk

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PHUC THIEN TRAN, also known as
Tri Thanh Tran,

    Defendant - Appellant.

No. 01-2093

## ORDER

Filed April 4, 2002

Before **LUCERO** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

    The Court's opinion of February 27, 2002, is vacated and a new opinion is simultaneously filed. This having been done, appellant's petition for rehearing is denied.

Entered for the Court

PATRICK FISHER,
Clerk of Court

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PHUC THIEN TRAN, also known as
Tri Thanh Tran,

Defendant - Appellant.

No. 01-2093

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(No. CR-00-195-MV)**

---

Edwin G. Winstead, Assistant United States Attorney (Norman C. Bay, United
States Attorney, with him on the briefs), Office of the United States Attorney,
Albuquerque, New Mexico, for Plaintiff-Appellee.

Michael A. Keefe, Assistant Federal Public Defender (Stephen P. McCue, Federal
Public Defender, with him on the briefs), Office of the Federal Public Defender,
Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **LUCERO** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Phuc Thien Tran appeals the sentence imposed by the district court following his conviction for one count of bank fraud in violation of 18 U.S.C. § 1344(1) and (2). Tran contends there was insufficient evidence to support the two-level enhancement he received under U.S.S.G. § 3B1.4 for using a minor to commit a crime, the six-level enhancement he received under U.S.S.G. § 1B1.3 for losses based on the court's relevant conduct finding, and the two-level enhancement he received under U.S.S.G. § 3C1.1 for obstruction of justice. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I

Tran, along with co-defendants Ky Phu Do and Vien Ngoc Doan, was recruited in California to execute a counterfeit check and bank fraud scheme in New Mexico. During December 1999 and early January 2000, Tran was flown from California to Albuquerque on more than one occasion to go to banks and cash fraudulent, preprinted checks purporting to be from companies that had accounts at the banks. Each of the co-defendants obtained New Mexico identification cards in the names of aliases, and the bogus checks—usually for amounts ranging from $800 to $1000—were made out to these aliases. In carrying out the scheme, Tran and his co-defendants often shared transportation and cashed or attempted to cash checks at the same bank branch on the same

-2-

dates. Tran was promised a commission of twenty-five percent of the value of the checks he was able to pass, and in all he personally cashed approximately $19,000 worth at various bank branches in Albuquerque. The total amount of checks they cashed as a group was approximately $133,000.

Tran did not cash any counterfeit checks after January 7, 2000, but from January 19 to January 21, his co-defendant Doan cashed checks worth approximately $50,000. In what the government termed a "bust out" scheme, Doan opened an account, deposited sufficient money into the account to cover any single check he cashed, and then cashed counterfeit checks at various branches of the bank where he had his account. There is no evidence that Tran assisted Doan in the late January scheme. The government alleged, however, that Tran was planning a similar scheme, noting that between January 18 and 20, Tran and the third co-defendant acquired new state identification cards and opened new checking accounts. In computing Tran's sentence, the district court counted all attempts by all of the defendants to cash all of the counterfeit checks as relevant conduct.

To help effectuate the scheme, the co-defendants employed a sixteen-year-old boy to pick them up at the airport, drive them to hotels and bank branches, and return them to the airport. The boy was paid between $100 and $300 each time Tran and his co-defendants visited New Mexico. When he was hired, the

boy was not told why he was driving the defendants around town, but after seeing large stacks of checks and overhearing the defendants' conversations, he deduced that they were cashing counterfeit checks. He also came to understand that the large payments made to him were a form of "hush money." (Tr. Sentencing Hr'g at 70.)

When Tran was arrested, he lied about his identity by providing a false address and a false name—Tri Thanh Tran—to the arresting Secret Service agent. He failed to correct the misidentification at several hearings before different magistrate judges, and kept silent at his detention hearing while his lawyer argued that he should be released because he had no prior criminal history. Tran in fact had a prior criminal conviction as well as two prior arrests, something that neither pretrial services nor the court—nor even his lawyer—knew about because he was using an alias.

Pursuant to a plea bargain, Tran pled guilty to one count of bank fraud. He was sentenced to eighteen months imprisonment and three years supervised release, and he was ordered to pay $103,853.33 in restitution to his victims.[1]

_____

[1] Tran has completed the term of imprisonment imposed by the district court. This appeal is not moot, however, because he is still serving the three year term of supervised release and is subject to the restitution payments ordered by the court.

## II

Where an appellant "ask[s] us to interpret the Guidelines or hold the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." United States v. Checora, 175 F.3d 782, 789 (10th Cir. 1999). We review the district court's underlying findings of fact for clear error. United States v. Tagore, 158 F.3d 1124, 1127 (10th Cir. 1998).

### A

Tran contends that a two-level upward adjustment in his offense level under U.S.S.G. § 3B1.4 for the use of a minor to commit a crime was unwarranted. The Guidelines provide for a two-level upward adjustment in offense level upon a finding that "the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4. The application notes define "used or attempted to use" to include "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, cmt. n.1. In deciding to apply the adjustment, the district court determined that Tran and his co-defendants employed a sixteen-year-old boy as a driver "on a repeated basis" and that the boy was

> taking them to the hotel, picking them up at the airport, taking them to the banks, [and] overhearing conversation with regard to the

checks. They were speaking about what was going on in [his] presence, and paying him an amount that would make him willing to keep picking them up at the airport and providing transportation services for them every time they came to New Mexico.

(Tr. Sentencing Hr'g at 106–07.)

Recognizing that these facts and the plain language of the statute do not favor him, Tran offers a rather strained analysis of the guideline's legislative history to convince us that hiring a sixteen-year-old boy to serve as a driver during a crime spree is not the type of behavior Congress intended to discourage. Specifically, he contends that the congressional directive leading to the promulgation of § 3B1.4 was "focuse[d] on the corrupting effect of an adult offender on a pliable minor" (Appellant's Br. at 18), and that there can be no corrupting effect if the adult does not tell the minor that the conduct for which he has been recruited is criminal in nature. The rule Tran thus proposes is that "[t]he defendant must inform the minor of the criminal purpose for which the minor's services are wanted and induce, or try to induce, the minor to commit the federal offense in question." ( Id. at 19–20.)

Tran's interpretation of § 3B1.4 finds no support in the case law. [2]

---

[2] Tran suggests that <u>United States v. Humphrey</u>, 208 F.3d 1190 (10th Cir. 2000), supports his claim that a minor must be solicited to knowingly participate in the offense before an enhancement is appropriate. <u>Humphrey</u> does not set out such a requirement. In that case, defendant was a methamphetamine dealer whose sentence was enhanced by the district court for "use" of a minor because he had

(continued...)

Moreover, we refuse his invitation to dive headlong into the legislative history of that provision. " Where the language [of the Guidelines] is clear and unambiguous, it must be followed except in the most extraordinary situation where the language leads to an absurd result contrary to clear legislative intent." Tagore, 158 F.3d at 1128 (quotation omitted). The language of § 3B1.4 is clear and unambiguous, and we conclude that enhancing Tran's sentence for his use of a sixteen-year-old boy to aid him in his bank fraud scheme is neither absurd nor contrary to Congress's intent.

**B**

The Guidelines provide that "relevant conduct" in the case of jointly undertaken criminal activity includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that

---

[2](...continued)
borrowed a minor's drug scales several times. The minor was herself an "independent" drug dealer. This Court concluded there was

> no basis for finding that [defendant] involved her in his activities, except for borrowing her scales. This is not sufficient to constitute "use" of a minor. There is no evidence of [defendant] "directing, commanding, encouraging, intimidating, counseling, training, processing, recruiting, or soliciting" [the minor] for the crimes of which [defendant] himself was convicted.

Id. at 1213. This holding does not encapsulate a requirement that a minor be informed of the nature of the criminal activity that is afoot in order to permit a finding that the minor has been "used" by the defendant.

occurred during the commission of the offense of conviction, [or] in preparation for that offense." U.S.S.G. § 1B1.3(a)(1)(B). The district court found that Tran engaged in a common scheme with his co-defendants and that he should be held responsible for their criminal behavior as well as his own. On appeal Tran argues that "the district court made no findings regarding whether [he] agreed to jointly undertake the conduct of his co-defendants or whether that conduct was reasonably foreseeable." (Appellant's Br. at 26.) We review the district court's factual finding supporting a determination of relevant conduct for clear error but review the ultimate determination of relevant conduct de novo. United States v. Svacina, 137 F.3d 1179, 1182 (10th Cir. 1998). The burden is on the government to prove, by a preponderance of the evidence, that the conduct of his coconspirators is to be attributed to the defendant for sentencing purposes. United States v. Melton, 131 F.3d 1400, 1403 (10th Cir. 1997).

A defendant is accountable for the conduct of others "that is within the scope of his agreement and reasonably foreseeable by him." United States v. Green, 175 F.3d 822, 837 (10th Cir. 1999). Tran urges that the proper test for ascertaining the scope of an agreement should include the following factors: (1) whether the defendant helped design the scheme; (2) the defendant's relationship to the scheme's designer; (3) whether the defendant pooled his profits with others; (4) whether he pooled resources with others; and (5) whether the

defendant's success depended on the success of others. (Appellant's Br. at 29 (citing Melton, 131 F.3d at 1406; United States v. Studley, 47 F.3d 569, 575 (2d Cir. 1995)).) Applying this test, Tran contends that the acts of his co-defendants cannot be ascribed to him as relevant conduct because (1) he was not the mastermind of the scheme; (2) he was just an employee of the scheme's designer; (3) none of the defendants pooled their profits; (4) his sharing transportation to the crimes with the other defendants does not warrant a finding of an agreement among them; and (5) the success of the other participants could be of no help to him. (Id. at 30–32.)

We are unpersuaded. Tran's proposed test is not prescribed by this Circuit's precedent, and even if we were to adopt it we would not reverse the district court's conclusion that the acts of Tran's co-defendants were performed in furtherance of jointly undertaken criminal activity that was both reasonably foreseeable to him and within the scope of his agreement. In determining the scope of the criminal activity that a defendant has agreed to jointly undertake, "the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, cmt. n.2. The district court determined at sentencing:

> [The defendants] were traveling to New Mexico together. The reservations for travel were made together. Three of them were using the same transportation service once they arrived in New Mexico. They were using the same checks. They were basically

> committing the offense in the exact same manner. . . . Clearly they were going to the same banks. They also went to the New Mexico Motor Vehicle Division to get identifications. . . . I think that there are sufficient similarities and sufficient instances in which they are not only doing similar things, but doing them together, that it is appropriate in this context to attribute to all of them the full amount of the loss.

(Tr. Sentencing Hr'g at 108–09.) These findings clearly support the district court's conclusion that the fraudulent acts of Tran's co-defendants were reasonably foreseeable to him and within the scope of his agreement. As such, application of a relevant conduct enhancement was perfectly appropriate. Cf. U.S.S.G. § 1B1.3, cmt. n.2, illus. (c)(8) (illustrating the applicability of a relevant conduct enhancement where defendants in a drug transportation scheme received shipments from their supplier at the same time, coordinated their efforts, and aided and abetted each other's actions).

C

On February 2, 2000, Tran identified himself by his alias—Tri Thanh Tran—to the Secret Service agent who arrested him. On February 3, Tran made his initial appearance before a magistrate judge and at that time failed to reveal his true identity. On February 7, the magistrate judge held a detention hearing for Tran at which Tran again failed to inform the court of his real name. During this hearing Tran's counsel argued that Tran should be released from custody for two reasons: (1) that the Pre-Trial Services report did not show that Tri Thanh Tran

-10-

had any prior criminal history, and (2) that there was a lack of evidence that Tran knew that the checks he was cashing were counterfeit because they were all made out in his name. On March 3, Tran appeared before another magistrate judge for an arraignment hearing and again falsely identified himself as Tri Thanh Tran, providing the court with a false date of birth and social security number. Not until July did government investigators learn that Tri Thanh Tran was actually Phuc Thien Tran and that Phuc Thien Tran had at least two prior criminal arrests. On August 11, the district court granted the government's motion to amend the case caption to reflect Tran's real name.

Pursuant to U.S.S.G. § 3C1.1, the district court at sentencing applied an "obstruction of justice" enhancement to Tran's sentence based upon Tran's failure to properly identify himself to a magistrate judge. Tran, however, contends it was error to find he obstructed justice because his use of a false identity was not material within the meaning of this Guidelines section.

A defendant's base offense level is to be increased by two levels if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation [or] prosecution . . . of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. As an example of the type of conduct to which this section applies, the

application notes identify in particular "providing materially false information to a judge or magistrate." Id. cmt. n.4(f). This Court has previously determined that withholding one's identity from a magistrate falls within the scope of this section:

> [Defendant] failed to disclose his true identity to a United States Magistrate in three separate appearances, as well as at the time of his arrest. By withholding his identity from the United States Magistrate, [defendant] came within § 3C1.1 as clarified by the 1990 Application Note 3(f), which states that "providing materially false information to a judge or magistrate" merits an obstruction of justice enhancement. The district court thus correctly interpreted Guidelines § 3C1.1 as permitting an obstruction of justice enhancement under the circumstances of this case based solely on [defendant's] use of an alias.

United States v. Gardiner, 931 F.2d 33, 35 (10th Cir. 1991).

Tran contends that his provision of a false name and social security number at his arraignment was immaterial to that proceeding because its only purpose was to advise him of the charges pending against him and of the penalties that could be imposed upon him if convicted. This argument neglects the fact that Tran's deceit began immediately upon his arrest and was maintained through at least three separate hearings before magistrate judges. It is plain that Tran's misidentification of himself was an attempt to obstruct or impede the administration of justice, and that this attempt might well have borne fruit at his detention hearing if the court had decided to release him based on his apparent lack of a criminal history. Although it is true that "providing a false name or identification document at arrest" alone will not ordinarily warrant an adjustment

-12-

pursuant to the obstruction-of-justice guideline, U.S.S.G. § 3C1.1, cmt. n.5(a), Tran's continued failure to identify himself properly at his subsequent court hearings is more than sufficient to allow us to conclude that an adjustment was warranted in the present case.[3]

The district court, which properly noted that the "identification of who the defendant is before the Court has everything to do with what the Court decides in terms of release," (Tr. of Sentencing Hr'g at 107,) did not err by applying an obstruction of justice enhancement to his sentence.

### III

We **AFFIRM** Tran's sentence.

---

[3]    At the sentencing hearing, the district court discussed in particular the effect that Tran's misidentification at his arraignment would have on the court's decision about whether or not to incarcerate him. Even if we were to accept Tran's contention that his provision of a false name and social security number to the magistrate judge at the arraignment was not "material" because his detention status was not at issue at that hearing, his argument that an adjustment is unwarranted will not prevail. Although the district court spoke directly to Tran's affirmative misrepresentations at the arraignment, we do not read its discussion of the obstruction-of-justice issue as premised solely upon Tran's statements at that hearing, to the exclusion of the other lies of commission and omission detailed in the record.