FILED
United States Court of Appeals
Tenth Circuit

April 15, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　Plaintiff-Appellant,

v.

LOUIZ PEÑA-HERMOSILLO,

　　Defendant-Appellee.

No. 06-8075

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 05-CR-152-B)**

---

Kenneth R. Marken, Special Assistant United States Attorney (Matthew H. Mead, United States Attorney, David A. Kubichek, Assistant United States Attorney with him on the briefs), Casper, Wyoming for the Plaintiff-Appellant.

David L. Serelson, Cheyenne, Wyoming for the Defendant-Appellee.

---

Before **McCONNELL**, **SEYMOUR**, and **EBEL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

　　The government appeals the district court's decision to sentence the

defendant to 121 months in prison, well below the applicable advisory Sentencing

Guidelines range. Prior to varying downward, the court rejected the applicability

of two sentencing enhancements recommended by the pre-sentence report and urged by the government. We find that the district court committed procedural error in its calculation of the advisory Guidelines range because it did not provide a sufficient explanation for its denial of the enhancements. We also find that the court's alternative holding that the 121-month sentence "would be imposed even if the advisory guideline range was determined to be improperly calculated" was likewise procedurally unreasonable. R. 70. We therefore reverse and remand to the district court to vacate and resentence.

## I. Background

All background facts are adopted from the pre-sentence report (PSR) and the sentencing hearing. Defendant-Appellee Louiz Peña-Hermosillo started dealing drugs in 2001 at the age of sixteen. Around this time, he began living with Ms. Janae Kelly, who was twelve. She gave birth to Mr. Peña-Hermosillo's child just after her fourteenth birthday. She began to perform drug-selling activities a month before the child was born, in April 2003. From that time until Mr. Peña-Hermosillo was arrested two years later, Ms. Kelly sold cocaine and methamphetamine and made between thirty and forty trips to Utah and an unstated number of trips to Colorado to deliver money and retrieve drugs. In two separate interviews with police, she stated that she made these trips on the defendant's behalf, but in court she stated that the defendant didn't tell her what to do and that she "had a mind of [her] own." R. at 62.

-2-

On January 3, 2005, the police stopped Mr. Peña-Hermosillo for a traffic violation. He was driving with companions, one of whom was Roberto Becerill-Garcia. The officer searched the vehicle and found approximately one ounce of methamphetamine, a small amount of marijuana, two handguns, and approximately $3,400 in cash. The officer arrested Becerill-Garcia for possession of methamphetamine and Mr. Peña-Hermosillo for the traffic offense. Later, Becerill-Garcia told an investigator that they had been on a drug run from Casper, Wyoming to Uma, Colorado, and that Mr. Peña-Hermosillo was a major drug dealer who had intimidated Becerill-Garcia into going on the run with him. Becerill-Garcia also told the officers that during the traffic stop, Mr. Peña-Hermosillo called his new girlfriend and ordered her to "clean house," which was code for getting rid of any drugs at Becerill-Garcia's home, one of Mr. Peña-Hermosillo's storage locations. When the police later searched this location, they found a large quantity of different types of ammunition, but no guns or drugs.

Soon after, police started meeting with several confidential informants familiar with Mr. Peña-Hermosillo's activities. These individuals informed the police that Mr. Peña-Hermosillo was using Mike Hogan's home, in addition to Becerill-Garcia's home, as a hiding place for methamphetamine and cocaine. Mr. Peña-Hermosillo also stored methamphetamine at his own home.

On March 11, 2005, Mr. Peña-Hermosillo was again stopped by the police, this time immediately after selling one ounce of methamphetamine to Mike

Hogan. During their search, the police found a black wallet with $650 in cash, two small baggies of suspected cocaine, and an additional $1560 in cash, all but ten dollars of which was obtained during the drug deal. After receiving *Miranda* warnings, Mr. Peña-Hermosillo admitted to selling drugs to Mike Hogan and confessed to obtaining drugs from various sources over the past month. During a subsequent search of the defendant's home, the police found drug paraphernalia, guns, marijuana, and methamphetamine.

Mr. Peña-Hermosillo was arraigned on drug charges in state court as a result of the March 11 arrest. He was released on bond. On June 17, 2005, while he was still out on bond, officers found him in possession of additional methamphetamine.

Mr. Peña-Hermosillo was charged and pleaded guilty to four federal drug charges: (1) conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1), (b)(1)(A); (2) possession with intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A); (3) possession with intent to distribute cocaine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C); and (4) possession with intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B). The statutory minimum sentence, based on Counts One and Two, was ten years; the maximum was life.

The probation officer prepared a presentence report, recommending an initial offense level of 36 with a criminal history category II. The PSR then recommended a three-level adjustment for acceptance of responsibility, U.S.S.G. §3E1.1(a), a two-level enhancement for use of a gun, U.S.S.G. §2D1.1(b)(1), and two additional enhancements for the use of a minor and for acting as a manager/ supervisor of criminal activity involving five or more persons. U.S.S.G. §3B1.4; U.S.S.G. §3B1.1(b). With the enhancements, the offense level was 40 and the advisory Guidelines range was 324–405 months. Mr. Peña-Hermosillo objected to these latter two enhancements.

Both the defendant and the prosecutor sought to introduce witness testimony with respect to the challenged enhancements. Defense counsel informed the court that Ms. Kelly was present and would tell the court that Mr. Peña-Hermosillo

> didn't tell her what to do and . . . didn't supervise her and. . . didn't manage her and she has a drug problem and she has since been through drug treatment . . . [and] holds no remorse toward Mr. Peña or any expectation that her conduct was related to anything but her own choices and not any pressure or any management or any supervision of Mr. Peña.

R. at 34. Ms. Kelly was allowed to make an unsworn statement. She informed the court that she had "been around drugs since before [she] was. . . born," *id*. at 61, and that "it's not like he told people what to do. I have a mind of my own," *id*. at 62.

The prosecutor informed the sentencing judge that an investigator was prepared to testify in support of the challenged enhancements. The district court, however, declined to hear the prosecution's witness. The prosecutor then made an extensive oral proffer of the evidence that would have been presented, which largely tracked the evidence summarized in the PSR.

The district judge denied both enhancements, finding that Mr. Peña-Hermosillo's relationship with Ms. Kelly did not fall within the "spirit" of the use of a minor enhancement, R. 48, and that "I don't feel that you were a manager." *Id*. at 66. He made few additional factual findings and offered no written explanation.

Without the two disputed enhancements, the range was 188–235 months. The district court found that the minimum Guidelines sentence of 188 months

> is entirely wrong for a young man who is 20, and admits his error and wants to do better, and I think because of your youth, and because of these factors in Section 3553, that the need for the sentence imposed should reflect the seriousness of the offense.
>      I think that a 10-year sentence certainly does that and it should . . . afford adequate deterrence to criminal conduct and I think the 10-year mandatory minimum certainly affords deterrence, and third, it should protect the public from further crimes. I think for 10 years the public is going to be protected. . . .

*Id*. The court therefore decided to reduce the offense level an additional four levels, and to impose a sentence of 121 months—one month above the statutory minimum for Counts One and Two. The court then stated that "the same sentence

would be imposed even if the advisory guideline range was determined to be improperly calculated." *Id.* at 70.

## II. Applicability of Guidelines Enhancements

The government challenges the district court's refusal to apply the "manager or supervisor" enhancement of U.S.S.G. §3B1.1(b) and the "use of a minor" enhancement of U.S.S.G. §3B1.4. Both enhancements were recommended by the PSR, which recited the evidence supporting them.

The defendant lodged timely objections to both enhancements. These objections triggered the judge's fact-finding and explanatory duties. Under Fed. R. Crim. P. 32(i)(3)(B), the district court is required "for any disputed portion of the presentence report or other controverted matter—[to] rule on the dispute. . . ." *Id*. Though "[a] ruling on a disputed issue need not be exhaustively detailed. . . it must be definite and clear." *United States v. Williams*, 374 F.3d 941, 947 n.9 (10th Cir. 2004). At the very least, the district court must find and articulate sufficient facts and reasons to allow us to review the appropriateness of the enhancement; without such findings, we would have to engage in conjecture to divine the basis for the district court's ruling. Failure to provide proper explanation for the chosen sentence is reversible procedural error. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007).

### A. The Manager-Supervisor enhancement

A defendant receives a three-point increase in criminal offense level if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. §3B1.1(b). According to the Guidelines commentary, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id*., cmt. 2. This means that the enhancement applies only when the defendant had "decision-making authority or control over a subordinate." *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir. 1993).

The question of whether a defendant is a manager or a supervisor is a mixed question of law and fact. *See United States v. Cruz Camacho*, 137 F.3d 1220, 1223-34 (10th Cir. 1998). We held, in *Cruz Camacho*, that because the ultimate conclusion of whether the defendant qualifies for this enhancement is so firmly rooted in "sophisticated factual determinations" based on the sentencing court's "assessment of the broad context of the crime, . . . the sentencing court's determination that the defendant was an organizer . . . is a factual finding subject to the clearly erroneous standard of review." *Id*. at 1223. Because the "context of the crime" is so important to the ultimate conclusion, the district court must conduct a thorough review of all subsidiary facts that might be relevant to the ultimate manager-supervisor determination.

At sentencing, there were two competing versions of the nature of Mr. Peña-Hermosillo's relationship to other drug dealers identified in the PSR. The PSR and the government's proffer indicated that the drug distribution enterprise in which Mr. Peña-Hermosillo engaged involved well more than five participants, including Kelly, Becerill-Garcia, Hogan, Anthony Losoya, Kylie Lemmon-Cantrell, and persons identified as "Wetto" (or "Guero") and "Sancho." R. 40–43. Evidence indicated that Kelly transported drugs on the defendant's behalf, that Becerill-Garcia stored drugs for the defendant and was forced to accompany the defendant to Colorado for a drug pick-up, that Hogan stored drugs for the defendant at his body shop, that Losoya "packed a gun while he accompanied Mr. Peña," that Wetto accompanied the defendant on a drug run, that Sancho made many "deliveries and trips down to Utah on Mr. Peña's behalf," and that Lemmon-Cantrell, who was also the mother of his second child, removed guns and drugs from the defendant's residence at his request when the police were on the way. *Id.* This evidence included Ms. Kelly's prior statements to police that she ran drugs "for Peña" and that he had paid her expenses on drug runs to Utah.

Though not disputing many of the primary facts as stated in the PSR and the government's proffer, defense counsel argued against application of the manager-supervisor enhancement on the ground that "by virtue of his age," it was "unrealistic to believe" that Mr. Peña-Hermosillo was directing the adults in the operation. R. 33. With respect to Ms. Kelly, he stated that she was present and

"she would tell you that [Mr. Peña-Hermosillo] didn't supervise her and he didn't manage her and she has a drug problem . . ." and that "her conduct was [not] related to anything but her own choices and not any pressure or any management or any supervision of Mr. Peña." R. 34. Ms. Kelly's unsworn statement to the court provided some support for this argument. She told the court that "[i]t's not like he told people what to do. I have a mind of my own." *Id.* at 62.

The district court and defense counsel also engaged in the following colloquy:

> THE COURT: Would you say [the defendant] was not the manager of the whole operation, but he did take the lead in some aspects of it?
>
> MR. SERELSON: I think that's probably a fair characterization, Your Honor.
>
> THE COURT: That's what it seemed to me, after I read it.
>
> MR. SERELSON: I believe that's a fair characterization. I would not dispute that.

*Id.* at 34–35.

Despite this concession, the seemingly pertinent evidence in the government's proffer, and the inconsistencies between defense counsel's proffer regarding Ms. Kelly's testimony and her prior statements to police, the district court did not hold an evidentiary hearing and provided almost no explanation for the denial of the enhancement. The sole reasoning given was as follows:

> . . . I believe that there is good grounds to doubt the question of whether or not the defendant first was a minor [sic] or a supervisor.

I think that he sold drugs, that he associated with those who did, that Miss Kelly was really not a subordinate. She was his common law wife, with whom he had a child and they were involved in drug trafficking when she met him and I don't think he really supervised them, so I'm going to grant the objection to the three-level increase for manager or supervisor.

*Id.* at 47. Later, when imposing sentence, the court stated: "I don't feel that you were a manager." *Id.* at 66.

This explanation falls short of the required "ruling" under Fed. R. Crim. P. 32(i)(3)(B). Here, the basis for the court's "feeling" that Mr. Peña-Hermosillo was not a manager was anything but clear. Even assuming the court accepted Ms. Kelly's in-court statement and concluded from it that Mr. Peña-Hermosillo did not supervise, manage, or direct her drug trips and sales, the court failed to explain why the government's proffered evidence fell short of establishing Mr. Peña-Hermosillo's supervisory role over at least one of the other participants. The district court acknowledged that Mr. Peña-Hermosillo took "the lead in some aspects" of the operation, R. 34-35, but it did not state why this did not make him a manager-supervisor. Perhaps the district court found that Mr. Peña-Hermosillo's age made it improbable for him to exert such a significant supervisory role, as defense counsel argued, or maybe the court found the evidence proffered by the government and summarized in the PSR unbelievable. But the court did not say so. If the government's proffered evidence was credible, it certainly was sufficient to support a manager-supervisor enhancement. Without a more thorough explanation, we are left wondering how the district court interpreted the evidence

-11-

and why he found that it did not support the offense level increase. Because the district court's reasoning was not "definite and clear," we reverse and remand for further fact-finding and explanation. *Williams*, 374 F.3d at 947.

## B. Use of a Minor enhancement

A defendant's offense level must be increased by two points if he "used or attempted to use a person less than eighteen years of age to commit the offense." U.S.S.G. §3B1.4. According to the application note, "using" includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* at cmt. n.1. Proof that the defendant and the minor participant were mere co-conspirators or confederates is not sufficient to establish this enhancement. *See United States v. Suitor*, 253 F.3d 1206, 1210 (10th Cir. 2001). *See also United States v. Pojilenko*, 416 F.3d 243, 247 (3d Cir. 2005); *United States v. Ramsey*, 237 F.3d 853, 860 (7th Cir. 2001).

We review legal determinations, such as whether or not a certain action constitutes "use", de novo, *United States v. Kravchuk*, 335 F.3d 1147, 1158 (10th Cir. 2003), and factual determinations, such as whether that action occurred, for clear error, *United States v. Tran*, 285 F.3d 934, 937 (10th Cir. 2002).

The government proffered evidence that Mr. Peña-Hermosillo "used" Janae Kelly, his teenage girlfriend, to assist in his drug dealing. The proffered evidence included summaries of two interviews Ms. Kelly gave to police officers. According to the PSR and the government's proffer, Ms. Kelly sold cocaine and

-12-

methamphetamine for Mr. Peña-Hermosillo over the course of more than two years, and also "made approximately 30–40 trips to Utah to pick up methamphetamine for Peña." R. 96. She began making trips to Utah on his behalf to deliver money or obtain drugs when she was only thirteen years old. Ms. Kelly would drive rental vehicles obtained on Mr. Peña-Hermosillo's sister's credit card, although she was too young to have a license. Although both had their own customers, Ms. Kelly transported and sold drugs for Mr. Peña-Hermosillo (as shown by the fact that he paid for her expenses), while there is no evidence that he transported or sold drugs for her. *See id.* at 97 (reporting Ms. Kelly's statement to investigators that "she sold a lot of the drugs for Peña"). Ms. Kelly undertook at least one of these trips while eight months pregnant with Mr. Peña-Hermosillo's child. Ms. Kelly also made trips to Colorado in 2005 on Mr. Peña-Hermosillo's behalf. Mr. Peña-Hermosillo was three and a half years older than Ms. Kelly. Although at the beginning of these activities the defendant was also a minor, Ms. Kelly's transportation and sale of drugs for Mr. Peña-Hermosillo continued for more than a year and a half after his eighteenth birthday.

The defendant contested the nature of the relationship. In his argument to the court, defense counsel emphasized that their criminal activity started when both parties were minors. Ms. Kelly herself claimed that Mr. Peña-Hermosillo did not tell her what to do, and that she had "a mind of [her] own." R. 62. She also told the court that she had been involved with and surrounded by drugs since she

-13-

was born.  This evidence was presented to suggest that Mr. Peña-Hermosillo and

Ms. Kelly were co-equals in a partnership.

The district judge declined to apply the enhancement.  The district judge

explained:

> The spirit of the enhancement is to punish adults who exploit minors,
> and I don't feel that Mr. Peña fits this mold, because his girlfriend
> was very close to him in age and he wasn't really exploiting her so
> much as he was misleading his wife.  And I doubt very much she was
> really misled a lot by him, so I'm going to grant . . . the two-level
> reduction [for use of a minor]. . . .

*Id*. at 48.  Earlier in the hearing, the judge stated: "Here you've got one minor

living with another minor and he asks her to go down to Salt Lake and pick up

some drugs for him, . . . and it wasn't anything that she hasn't been doing."  *Id.* at

45–46.  He also observed that Ms. Kelly was "involved in drug trafficking when

she met" Mr. Peña-Hermosillo.  *Id.* at 47.

As with the manager-supervisor issue, the district court's explanation falls

short of the required "ruling" under Fed. R. Crim. P. 32(i)(3)(B).  In particular, it

is not clear whether the district judge concluded that, as a matter of law, the

enhancement did not apply under the government's proffered facts or, if the ruling

was based on a factual finding, why he resolved the factual dispute against the

prosecution without hearing the government's proposed testimony.

The defendant's principal argument at sentencing regarding the "use of a

minor" enhancement was that the two parties began their relations when both were

minors and that the "the purpose of the statute, is to protect minors from older, unscrupulous adults who try to take advantage and influence, enlist their experience and age." R. 36. This appears to be an argument that, as a matter of law, the enhancement cannot apply when the defendant's relationship with the "used" person began when the defendant was a minor. The district court expressed agreement with this argument during the hearing, and it provides the most plausible explanation for why the court might have determined that the enhancement is inapplicable.

The plain language of U.S.S.G. §3B1.4 contains no limitation based on the defendant's age, the proximity in ages between the defendant and the "used" person, or the nature of their relationship, other than to say that the person must be under eighteen and the defendant must engage in "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting" him or her. U.S.S.G. §3B1.4 & cmt. n.1. There is, however, some support in the legislative history for the defendant's argument. Congress originally directed the Commission to promulgate an enhancement for use of a minor by defendants over twenty-one. *Kravchuk*, 335 F.3d at 1158 (citing Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 §140008, 108 Stat. 1796 (1994)). Congress also instructed the Commission to consider "the possible relevance of the proximity in age between the offender and the minor(s) involved in the offense," suggesting that if the two were close in age, the coercive

force might be mitigated. *United States v. Ramsey*, 237 F.3d 853, 857 (7th Cir. 2001); 108 Stat. 1796. When drafting the guideline, however, the Sentencing Commission included neither an age limitation nor any limitation based on proximity in ages, and Congress took no step to override this decision. In affirming application of the enhancement to defendants above the age of seventeen, some courts, including this one, have used language that implies that it would not apply to younger defendants. *See Kravchuk*, 335 F.3d at 1158 ("[W]e follow the reasoning of the Fourth and Seventh Circuits in holding that U.S.S.G. §3B1.4 is valid as applied to defendants aged eighteen to twenty."); *United States v. Ramirez*, 376 F.3d 785, 788 (8th Cir. 2004).

We need not resolve whether this legislative history prevails over the plain language of the Guideline because for more than a year and a half, including most of the conduct on which the government relies, Mr. Peña-Hermosillo was eighteen or older. Moreover, the three and a half year difference in their ages is surely large enough to satisfy the nonproximity requirement, if there is one. As the prosecutor pointed out at the hearing, the defendant was a junior in high school when Ms. Kelly was still in seventh or eighth grade. That is a large enough difference in ages to enable him to take advantage of her. If this was the basis for the district court's ruling, it would be an error of law.

Alternatively, the district court may have concluded as a factual matter, based on defense counsel's proffer regarding Ms. Kelly's testimony and her

-16-

unsworn in-court statement, that Ms. Kelly and Mr. Peña-Hermosillo were mere confederates, with neither in a supervisory role. *See* R. 48 ("[H]e wasn't really exploiting her so much as he was misleading his wife. And I doubt very much she was really misled a lot by him, so I'm going to grant . . . the two-level reduction [for use of a minor]"). The question then would be why the court declined to allow the prosecution to put on testimony addressing this issue, or which aspects of the government's proffer it accepted and which it disbelieved.

The Rules of Criminal Procedure state that the district court "must" allow the parties to "comment on the probation officer's determinations and other matters relating to an appropriate sentence," and that the court "may" permit the parties "to introduce evidence on the objections." Fed. R. Crim. P. 32(i)(1)(C), 32(i)(2). The Sentencing Guidelines provide that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G. §6A1.3. This does not give any party the right to introduce live testimony, but they must be given an "adequate" opportunity to present relevant information to the court. *United States v. Gines*, 964 F.2d 972, 978 (10th Cir. 1992). *See Rita v. United State*s, 127 S. Ct. 2456, 2465 (2007) (stressing "the thorough adversarial testing contemplated by federal sentencing procedure"). After the parties' presentation of information, the sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on

-17-

the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

Here, in response to the defendant's objections to the enhancements, the government and the defendant sought to introduce live testimony. Although the district court did not allow formal testimony from either side, it did allow Ms. Kelly to state that the defendant did not "tell [her] what to do," which was the only basis in the record for the court's conclusion that the "use of a minor" enhancement was inapplicable as a matter of fact. Ms. Kelly's statement was also relevant to the manager or supervisor enhancement. The court refused to allow the government to present contradictory testimony, including testimony that Ms. Kelly herself had told police she transported drugs "for Peña" and that he had paid the expenses of her trips. It would be an abuse of discretion for the district court to decide a disputed question of fact against a party without giving that party an opportunity to present relevant and admissible evidence. *United States v. Sienkowski,* 359 F.3d 463, 467 n.1 (7th Cir. 2004) ("[A]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.") (quoting U.S.S.G. §6A1.3 cmt.); *United States v. Jimenez Martinez,* 83 F.3d 488, 494-95 (1st. Cir. 1996).

The district court provided no explanation for its refusal to permit the parties to introduce testimony on this disputed issue. We therefore do not know

why it denied the enhancement on this record. Failure to explain a Guidelines sentence adequately is a form of procedural unreasonableness, and we reverse and remand on that ground. *See Gall*, 128 S. Ct. at 597. On remand, the district court should hold an evidentiary hearing on the disputed facts, or explain on the record why any such evidence would be immaterial.

### III. The District Court's Alternative Holding

Normally, our analysis would end here. But in this case the court held, in the alternative, that "the same sentence would be imposed even if the advisory guideline range was determined to be improperly calculated." R. 70. We take this to mean that the court would impose the same 121-month sentence even based on a recommended guideline range 324–405 months. The court stated that its 121-month "sentence is the most reasonable sentence upon consideration of all the factors enumerated in 18 U.S. Code Section 3553." *Id.* The defendant contends that, even if the district court had the legal authority to apply the two contested enhancements, its imposition of a 121-month sentence was not unreasonable given the court's consideration of the § 3553(a) factors.

We find procedural error even in the district court's attempt to impose the same sentence under an alternative rationale. We believe that the district court's cursory explanation for its alternative rationale—that its 121-month "sentence is the most reasonable sentence upon consideration of all the factors enumerated in 18 U.S. Code Section 3553," R. 70—falls short of the explanation necessary for

-19-

sentencing under § 3553, especially where the variance from the guidelines range is as large as this. *See Gall*, 128 S. Ct. at 597 (noting that "failing to adequately explain the chosen sentence" is procedural error).

When a district court imposes a sentence outside the recommended guideline range, Title 18 U.S.C. § 3553(c)(2) requires the court to provide "the specific reason for the imposition of a sentence different from the Guideline range." *United States v. Angel-Guzman*, 506 F.3d 1007, 1016 (10th Cir. 2007) (internal quotation marks and alterations omitted). The Supreme Court recently reiterated that the extent of the required explanation varies according to the circumstances of the case, finding it "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 128 S. Ct. at 597; *see also Rita*, 127 S. Ct. at 2468–69 ("Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments."). With this principle in mind, we find the district court's alternative rationale procedurally unreasonable, because inadequately explained.

The district court found that the same sentence would be appropriate under the facts of this case even if the correct offense level were five points higher and the recommended guidelines range 136 months higher. Surely that requires some explanation beyond a vague statement that the sentence is appropriate under § 3553(a). Indeed, it is hard for us to imagine a case where it would be procedurally

-20-

reasonable for a district court to announce that the same sentence would apply even if correct guidelines calculations are so substantially different, without cogent explanation. In the absence of explanation, we might be inclined to suspect that the district court did not genuinely "consider" the correct guidelines calculation in reaching the alternative rationale, as is required under *United States v. Booker*. 543 U.S. 220, 259–60 (2005); *see also Gall*, 128 S. Ct. at 597.

In this case we need not determine when, if ever, an alternative holding based on the exercise of *Booker* discretion could render a procedurally unreasonable sentence calculation harmless. We hold only that where the district court offers no more than a perfunctory explanation for its alternative holding, it does not satisfy the requirement of procedural reasonableness.

## IV. Conclusion

We have held that the district court failed to articulate its reasons for denying the enhancements. In addition to denying the introduction of actual evidence regarding these enhancements, the district court did not make a procedurally adequate Rule 32(i)(3)(B) ruling on the disputed issues. We therefore remand for an evidentiary hearing (or explanation why the evidence is immaterial) and a resentencing on these enhancements. We have also held that, based on the district court's alternative rationale under which the disputed enhancements applied, the sentence imposed was likewise procedurally reasonable for want of adequate explanation. While it was not unreasonable for the district

court to exercise its discretion and sentence below the advisory Guideline range, the district court's short explanation does not justify the extent of the variance. On remand, the district court should not hesitate to employ the discretion it has under *Booker* "to tailor the sentence in light of other statutory concerns," 543 U.S. at 245–46, but we remind the court of its obligation to explain "the specific reason for the imposition of a sentence different from [the Guideline range]," 18 U.S.C. § 3553(c)(2).

We **REVERSE** the sentence and **REMAND** to the district court to vacate and resentence.

United States v. Pena-Hermosillo, No. 06-8075

**EBEL**, Circuit Judge, concurring.


I agree with the majority opinion that the 121-month sentence imposed by the district court must be vacated and this case remanded for another sentencing proceeding.  But in addressing the primary justification offered by the court for its sentence, I would vacate the sentence and remand using a different analysis than the majority opinion applies in Part II.  I do agree, however, with the majority opinion's Part III, concluding the alternative explanation for the 121-month sentence is procedurally unreasonable.

**I.      The Primary Sentence Issued by the District Court Addressed in Part II of the Majority Opinion**

The district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  Nevertheless, "[a]rguments that challenge the district court's application of the guidelines to the facts and not the facts themselves do not trigger any obligation on the part of the district court to make specific findings."  United States v. Cereceres-Zavala, 499 F.3d 1211, 1214 (10th Cir. 2007) (quotation, alteration omitted); see also United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006), citing cases, cert. denied, 127 S. Ct. 1338 (2007); United States v.

Harris, 447 F.3d 1300, 1306 (10th Cir. 2006). "[T]o invoke the district court's

Rule 32 fact-finding obligation, the defendant is required to make specific

allegations of factual inaccuracy." Cereceres-Zavala, 499 F.3d at 1214, 1215-16

(quotation omitted).

Here, although Defendant-Appellee Louiz Pena-Hermosillo clearly

challenged the application of two guidelines offense-level enhancements—the

three-level enhancement for being a manager or supervisor and the two-level

enhancement for using a minor in his criminal activities—he never disputed any of

the historical facts contained in the presentence report ("PSR"), either in his

written objections to the PSR as required by Fed. R. Crim. P. 32(f)(1) or during

the sentencing proceeding itself. Therefore, Rule 32(i)(3)(B)'s requirement that

the district court resolve factual disputes concerning historical facts was never

triggered.[1] See Rodriguez-Delma, 456 F.3d at 1248, 1253-54 (holding defendant's

objection that he was not an organizer or leader of the criminal activity, which did

not challenge the historical facts included in the PSR, did not trigger district

court's fact-finding obligation under Rule 32(i)(3)(B)); cf. United States v. Tovar,

27 F.3d 497, 499-500 (10th Cir. 1994) (applying prior version of Rule 32, Rule

32(c)(3)(D), and holding that contesting PSR's assertion that defendant was an

organizer, leader, manager or supervisor, without identifying any inaccuracies in

---

[1]For this reason, the district court did not err in refusing to take evidence or hear testimony during the sentencing proceeding.

PSR, did not require district court to make specific factual findings). The district court, in sentencing Pena-Hermosillo, could rely upon "any undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A), and was required to consider those historical facts carefully, see United States v. Mateo, 471 F.3d 1162, 1167 (10th Cir. 2006), cert. denied, 127 S. Ct. 2890 (2007). The district court never expressly rejected or found incredible any fact contained in the PSR. Further, by not previously objecting to the PSR's historical facts, Pena-Hermosillo has waived any opportunity to challenge those facts on remand. Cf. United States v. Kay, 961 F.2d 1505, 1507 (10th Cir. 1992) (holding that defendant's failure to object, before the district court, to the PSR's factual inaccuracies waives that issue for appeal).

This court, too, can rely upon the PSR's undisputed historical facts to review the district court's determination that neither of the challenged enhancements apply in this case.[2] See Wolfe, 435 F.3d at 1299; cf. Mateo, 471 F.3d at 1167 (noting that "[i]t is well established that the sentencing court is entitled to rely on uncontested facts contained in the PSR for certain sentencing purposes"); Harris, 447 F.3d at 1306 (noting that defendant's "failure to object to

---

[2]"[P]ost-Booker this court has refused to treat unobjected-to PSR facts as admitted for Sixth Amendment Booker purposes." United States v. Wolfe, 435 F.3d 1289, 1299 (10th Cir. 2006) (referring to United States v. Booker, 543 U.S. 220 (2005), and citing United States v. Bass, 411 F.3d 1198, 1204 n.7 (10th Cir. 2005)); see also Harris, 447 F.3d at 1306. But this case does not present a Sixth Amendment Booker problem.

the PSR created a factual basis for the court to enhance his sentence under the"

Armed Career Criminal Act).  Based upon the undisputed historical facts contained

in the PSR, I would conclude that the district court erred in refusing to apply

either of the two challenged enhancements in this case.

A.    **Enhancement for being a manager or supervisor**

U.S.S.G. § 3B1.1(b) provides that, "[i]f the defendant was a manager or

supervisor (but not an organizer or leader) and the criminal activity involved five

or more participants or was otherwise extensive," his offense level should be

increased three levels.  "A supervisor is one who exercised some degree of control

over others involved in the commission of the offense or must have been

responsible for organizing others for the purpose of carrying out the crime."

United States v. Allemand, 34 F.3d 923, 931 (10th Cir. 1994) (quotation, alteration

omitted).  "To qualify for the enhancement, [the defendant] need only manage or

supervise one participant."  United States v. Gonzalez Edeza, 359 F.3d 1246, 1248

(10th Cir. 2004).

The question of a defendant's role in the offense is a factual question, which

this court reviews for clear error.  See United States v. Cruz Camacho, 137 F.3d

1220, 1223-24 (10th Cir. 1998).  That is true even when, as here, the defendant

does not challenge the historical facts contained in the PSR but only contests the

ultimate finding that the defendant was a leader, manager or supervisor.  See

United States v. Wilfong, 475 F.3d 1214, 1218-19 (10th Cir. 2007).  "A finding is

not clearly erroneous unless it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." Gillman v. Ford (In re Ford), 492 F.3d 1148, 1153 (10th Cir. 2007) (quotation omitted). Based upon the unobjected-to historical facts in the PSR, the district court's factual finding that Pena-Hermosillo was not a manager or supervisor was clearly erroneous.

There is no dispute that Pena-Hermosillo's drug trafficking involved at least five people. Further, the PSR's facts clearly indicate that he directed others—to pick up drugs for him in Utah and Colorado, to store significant amounts of drugs for him in other people's homes and businesses, to permit him to sell drugs from these locations, to hide drugs for him during a traffic stop, and to "clean house" after he had been arrested. Considering all of the unobjected-to historical facts in the PSR, I am "left with the definite and firm conviction that" the district court made a mistake in finding that Pena-Hermosillo was not a manager or supervisor of at least one participant in the drug trafficking conspiracy. In re Ford, 492 F.3d at 1153.

**B.      Enhancement for using a minor in his drug trafficking**

U.S.S.G. § 3B1.4 provides that a defendant's offense level will be enhanced two levels if he "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." "'Used or attempted to use' includes directing, commanding,

-5-

encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." Id. app. n.1.

The district court erred, as a matter of law, in concluding that this enhancement cannot apply because Pena-Hermosillo was only seventeen when he began using his girlfriend in his drug trafficking activities. As the majority notes, "for more than a year and a half, including most of the conduct on which the government relies, Mr. Pena-Hermosillo was eighteen or older." Maj. Op. at 19. That is sufficient to support applying the use-of-a-minor enhancement under the facts of this case. See United States v. Kravchuk, 335 F.3d 1147, 1158-59 (10th Cir. 2003) (applying this enhancement where the defendant was eighteen).

Moreover, to the extent that the district court refused to apply this use-of-a-minor enhancement because there was no evidence that Pena-Hermosillo corrupted Kelly, this court has rejected such a requirement. See United States v. Tran, 285 F.3d 934, 937-38 (10th Cir. 2002) (applying only clear and unambiguous language of enhancement).

For these reasons, I agree with the majority that Pena-Hermosillo's 121-month sentence must be vacated and this case remanded for resentencing. Unlike the majority opinion's Part II, however, after addressing the sentence's procedural reasonableness, I would conclude that the district court erred in refusing to apply the two challenged enhancements and I would further conclude

that, at resentencing, the district court must apply those two enhancements to calculate Pena-Hermosillo's advisory guideline ranges.

## II.     The Alternative Sentence Addressed in Part III of the Majority Opinion

I agree with the majority opinion's Part III, that the alternative explanation for the 121-month sentence that the district court imposed was procedurally unreasonable. I strongly suspect that the alternative explanation would also be substantively unreasonable, particularly because the court's earlier erroneous rulings do give us insight into the court's reasoning. Nevertheless, for the reasons stated in Part III of the majority opinion, which I join, any substantive unreasonableness review should await resentencing after the procedural errors are corrected.